UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                               )
SHIRE LLC and                  )
SHIRE US INC.,                 )
                               )
            Plaintiffs,        )
                               )        CIVIL ACTION
        v.                     )        NO. 15-cv-13909-WGY
                               )
ABHAI, LLC,                    )
                               )
            Defendant.         )
_____)
```

**MEMORANDUM OF DECISION**

YOUNG, D.J.                            November 9, 2016

**I.   BACKGROUND**

Shire LLC and Shire US, Inc. ("Shire") commenced this suit
against Abhai, LLC ("Abhai") for alleged infringement of two of
Shire's patents: RE42,096 ("'096 Patent") and RE41,148 ("'148
Patent").[1]

Shire is the manufacturer of the drug ADDERALL XR, an
amphetamine-based pharmaceutical used in the treatment of
Attention Deficit Hyperactivity Disorder ("ADHD").  Compl.
Patent Infringement ("Compl.") ¶ 9, ECF No. 1.  The '096 and
'148 Patents pertain to a delayed-release medicine, which
delivers two doses of medication: one delivered shortly after

---

[1] Both the '096 and the '148 Patents are titled "Oral Pulsed
Dose Drug Delivery System."  Compl. ¶ 11.

administration, and one delivered about four to six hours later.
Compl. Ex. A, '096 Patent col. 3 ll. 10-13, ECF No. 1-2; Compl.
Ex. B, '148 Patent col. 3 ll. 23-26, ECF No. 1-3.  This delayed-
release mechanism allows a patient to take one pill per day
instead of two, which is more convenient for children, common
consumers of ADDERALL XR.  '096 Patent col. 3 ll. 5-17; '148
Patent col. 3 ll. 16-30.

To accomplish that end, the drug is administered via a pill
that contains multiple layers.  '096 Patent fig. 2A; '148 Patent
fig. 2A.  The first layer is an outer shell designed to dissolve
quickly and provide an immediate dose of amphetamine.  Within
the first layer of amphetamine is a second, thicker shell,
containing a second dose of amphetamine, designed to be
delivered later in the day.  '096 Patent col. 4 ll. 53-65; '148
Patent col. 4 l. 66 – col. 5 l. 11.  A key component of the
invention is the creation of a drug coating that ensures the
second dose of amphetamine is delivered about four to six hours
after the first release.  '096 Patent col. 4 ll. 6-16; '148
Patent col. 4 ll. 18-29.  This coating must withstand the stress
of passing through the stomach without prematurely delivering
the medicine.  '096 Patent col. 4 ll. 21-30; '148 Patent col. 4
ll. 34-43.  Shire accomplished this effect by using a thicker,
PH-resistant shell around the second dose of the drug.  '096
Patent col. 4 ll. 31-35; '148 Patent col. 4 ll. 44-58.

The Food and Drug Administration ("FDA") issued to Shire a New Drug Approval for ADDERALL XR for the treatment of ADHD. Compl. ¶ 13.  The FDA has listed the '096 and '148 Patents in its Approved Drug Products with Therapeutic Equivalence Evaluations (commonly known as "The Orange Book").  Id.

Abhai is a drug manufacturer which recently filed an Abbreviated New Drug Application ("ANDA") with the FDA to develop a generic version of ADDERALL XR prior to the expiration of the '096 and '148 Patents.  Compl. ¶ 14; Def. Abhai, LLC's Answer, Defenses, Countercls. ("Answer") 4, ECF No. 30.  Abhai's ANDA also contained certifications pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) with respect to the '096 and '148 Patents, which set forth the legal and factual basis for Abhai's position that those patents are invalid, unenforceable, or would not be infringed by Abhai's contemplated manufacture and sale of generic ADDERALL XR.  Compl. ¶ 15; Answer 8-9.

On September 20, 2016, this Court conducted a Markman Hearing, during which the parties argued their proffered constructions of the disputed claims in the '096 and '148 Patents.  This memorandum pertains only to the manner in which this Court construes the following section of claims 1 and 12 of

the '148 Patent: "a delayed enteric release dosage form that provides delayed release upon oral administration . . . ."[2]

## II.  LEGAL FRAMEWORK

Infringement analysis is a two-step process: (i) claims must be construed; and then (ii) the allegedly infringing device is compared to the properly-construed claims.  See Interactive Gift Express, Inc. v. Compuserve Inc., 256 F.3d 1323, 1330-31 (Fed. Cir. 2001) (citations omitted).  Construing a patent's claims is a matter reserved for the judge.  Markman v. Westview Instruments, Inc., 517 U.S. 370, 386 (1996).  Since claim construction is a mixed question of fact and law as the meaning of the claim term is the meaning understood by a person skilled in the art, the Supreme Court has recognized some deference must be shown to a district judge who makes factual findings in construing a claim.  Teva Pharms., USA v. Sandoz, Inc., 135 S. Ct. 831, 837-38 (2015).

---

[2] The parties dispute other terms in both patents, including '096 Patent, claims 1 and 2 ("delayed pulsed enteric release"); '096 Patent, claims 8 and 20 ("delayed pulse enteric release"); '148 Patent, claim 1 ("a human individual"), '148 Patent, claims 1 and 12 ("a human patient"); '148 Patent, claim 1 ("a plasma concentration versus time curve (ng/ml versus hours) having an area under the curve (AUC) of about 467 to about 715 ng hr/ml"); '148 Patent, claims 1 and 12 ("peak plasma concentration"); and '148 Patent, claim 2 ("said plasma concentration curve has a maximum concentration ($C_{max}$) of about 22.5 to about 40 ng/ml").  Def. Abhai, LLC's Opening Claim Construction Br. ("Def.'s Br.") 6, ECF No. 55.  The Court construed these terms during the Markman Hearing conducted on September 20, 2016.  Transcript of Markman Hearing at 34, 37, 46, ECF No. 80.

The starting point for construing claims is the actual claim language.  In particular, "[t]he inquiry into how a person of ordinary skill in the art understands a claim term provides an objective baseline from which to begin claim interpretation." Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc) (citation omitted).

The claims should not be interpreted in isolation, because "the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent."  Id. at 1321. Instead, claim language is to be read in light of "intrinsic evidence" such as the specification and prosecution history.[3] Id. at 1313; Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("[T]he specification is . . . the single best guide to the meaning of a disputed term.").

While courts may "rely heavily on the [specification] for guidance as to the meaning of the claims," Phillips, 415 F.3d at 1317, they are warned not to read limitations from the specification into the claims, Texas Dig. Sys., Inc. v. Telegenix, Inc., 308 F.3d 1193, 1205 (Fed. Cir. 2002).  In

_____

[3] If the intrinsic evidence fails to provide a conclusive interpretation of claim language, the court may look to "extrinsic evidence."  See Phillips, 415 F.3d at 1317 (citations omitted).  These sources can include expert witness testimony, dictionaries, and learned treatises.  See id.  Extrinsic evidence, however, has a secondary role in claims interpretation, and cannot usurp the plain meaning of claim terms.  See id.

certain circumstances, however, particular uses of language within the specification can be especially determinative when construing a claim.  For instance, the words "the present invention" or "this invention" in the specification can provide clear evidence of a claim term's scope.  Verizon Servs. Corp. v. Vonage Holdings Corp., 503 F.3d 1295, 1308 (Fed. Cir. 2007) ("When a patent thus describes the features of the 'present invention' as a whole, this description limits the scope of the invention.").[4]  Nevertheless, these words are not always so limiting, "such as where the references to a certain limitation as being the 'invention' are not uniform, or where other portions of the intrinsic evidence do not support applying the limitation to the entire patent."  Absolute Software, Inc. v. Stealth Signal, Inc., 659 F.3d 1121, 1136 (Fed. Cir. 2011).

Finally, it is a well-established principle of claim construction that language that is repeated throughout other claims in the same patent should be given identical construction when possible.  Phillips, 415 F.3d at 1314.  A corollary to that canon of construction is the doctrine of claim differentiation, which provides that "[t]here is presumed to be a difference in meaning and scope when different words or phrases are used in

---

[4] When construing claims, a court may "also consider the patent's prosecution history, if it is in evidence."  Markman, 52 F.3d at 980.  Since there is no prosecution history in this case, this aspect of claim construction is not considered.

separate claims." <u>Tandon Corp.</u> v. <u>Int'l Trade Comm'n</u>., 831 F.2d 1017, 1023 (Fed Cir. 1987).  Differently worded but similar claims in related patents, however, may still be construed identically where those patents share a specification and other technical details.  <u>Welker Bearing Co.</u> v. <u>PHD, Inc.</u>, 550 F.3d 1090, 1098-99 (Fed. Cir. 2008).  As such, whether differently worded claims are subject to claim differentiation depends on the relationship between the claims and the specifications of the related patents.

## III.  CLAIM CONSTRUCTION

The legal framework above is familiar terrain.  The devil is in the details.  That is, how to apply this framework to the claims at issue in this case.  Here, Shire and Abhai dispute the meaning of the following passage in claims 1 and 12 of the '148 Patent: "a delayed enteric release dosage form that provides delayed release upon oral administration."  Pls.' Prelim. Claim Construction Br. ("Pls.' Br.") 10-12, ECF No. 60; Def.'s Br. 11-14.  Shire contends that this term requires no construction, or, in the alternative, proffers the following construction: "a dosage form that is intended to delay release of drug until the dosage form has passed through the stomach after oral administration."  Pls.' Br. 10.  Abhai instead proposes the following construction: "a dosage form that provides rapid and complete release of drug (after a first dose by immediate

release) designed to be delayed until the drug has passed
through the stomach into the intestines after oral
administration."  Def.'s Br. 11.

Shire and Abhai's proposals differ in three main respects.
First, Shire's construction does not mention a rate of release
for the drug, while Abhai's construction requires a "rapid and
complete release of drug" (i.e., it is a pulsed release).
Second, Shire seeks to limit the meaning of "enteric" so as not
to refer directly to the intestines, but, instead, as merely
passing through the stomach.  Abhai's construction explicitly
mentions the intestines.  Finally, Shire's construction uses the
word "intended," whereas Abhai's construction uses "designed."

A.   **Timing of Release**

Shire and Abhai dispute whether the claim language requires
a reference to the rate of release for the drug.  Abhai's
proposed construction equates this claim language with "delayed
pulse[d] enteric release" from the '096 Patent.  Def.'s Br. 11-
12.  Shire, in turn, argues that construction is improper,
because the '148 Patent's claims, which omit the reference to
"pulse[d]" release, have wording different than the claims in
the '096 Patent, which directly mention "pulse[d]" release.
Pls.' Br. 11.

Shire therefore seeks to invoke the doctrine of claim
differentiation on the ground that the claims in the '096 Patent

specify a rate of release while the claims in the '148 Patent do not.  Id. (citing Tandon, 831 F.2d at 1023).  Claim differentiation is not, however, an absolute principle of claim construction.  Differently worded but similar claims in related patents can be construed identically, especially where those patents share a specification and other technical details. Welker, 550 F.3d at 1098-99.

The specifications of the '096 and '148 Patents are largely the same, and there is considerable overlap with regard to the technical details in the two patents.  Indeed, as will be discussed infra, the two patents even share the same figures. In the face of the overwhelming similarity between the two patents, claim differentiation does not apply.  Id.  Differently worded claims in the two patents may be capable of identical construction.  Id.  It is for this Court to determine -- based on ordinary principles of claim construction -- whether the claims under consideration ought be interpreted as the phrase "delayed pulse[d] enteric release," as it was in another patent.

The starting point for claim construction is the claims themselves, read in light of the specification.  Phillips, 415 F.3d at 1315.  Though courts typically avoid reading limitations from the specification into the claim, id. at 1323, the Federal Circuit has established that when a specification "describes the feature of 'the present invention' as a whole, this description

limits the scope of the invention." <u>Verizon</u>, 503 F.3d at 1308;
<u>SciMed Life Sys., Inc.</u> v. <u>Advanced Cardiovascular Sys., Inc.</u>,
242 F.3d 1337, 1343 (Fed. Cir. 2001).

Here, the '148 Patent includes the following description of
the "present invention" in the "Summary of the Invention"
section of the specification: "Accordingly, in view of a need
for successfully administering a multiple unit pulsed dose of
amphetamine salts and mixtures thereof, the <u>present invention</u>
provides an oral multiple unit <u>pulsed dose</u> delivery system for
amphetamine salts and mixtures thereof." '148 Patent col. 3 ll.
33-37 (emphasis added). Moreover, the word "pulse[d]" appears
multiple times throughout the specification, indicating the
importance of pulsed dosing to the patent. <u>See e.g.</u>, '148
Patent col. 4 ll. 44-48 ("Surprisingly, applicants found that
using a thicker application of enteric coating on the
formulation allowed for the second pulsed dose to be released
only and completely at the appropriate time in the desired
predetermined area of the gastrointestinal tract, i.e., in the
intestine."); <u>id.</u> col. 4, ll. 63-65 ("Accordingly, in one
aspect, the pulsed enteric release of the amphetamine salts is
accomplished by employing a certain minimum thickness of the
enteric coating."). It is plain that a "pulsed" release is
central to the invention. Thus, both Shire's own
characterization of the invention in the '148 Patent as a

"pulsed dose drug delivery system," and the centrality of pulsed dosing throughout the specification, indicate that Shire has limited itself to a "pulsed dose" invention.

Shire disputes that characterization of the "present invention." Pls.' Br. 11-12. In particular, Shire argues that the specification, as a whole, does not support the implication that the "present invention" is limited to a pulsed enteric release, because Fig. 6 of the '148 Patent indicates a sustained release, not a pulsed release. Transcript of Markman Hearing at 19, ECF No. 80. Shire contends that a sustained release is "described in the specification," and the "present invention" limitation of Verizon should not apply. Pls.'s Reply Claim Construction Br. 8.

It is difficult to reconcile Shire's argument that Fig. 6 in the '148 Patent necessitates a sustained release with the fact that Fig. 6 is also included in the '096 Patent. Inexplicably, then, the same figure that supports a pulsed release invention in the '096 Patent is here argued to support a sustained release invention in the '148 Patent. This situation becomes even more perplexing given that both patents describe "the present invention" in an identical manner, and share nearly identical specifications.

Simply stated, contrary to Shire's argument, the specification of the '148 Patent can only point to a pulsed

release dosage.  After all, it is a pulsed release dosage that Shire itself describes as "the invention" in the '148 Patent. As noted supra, Federal Circuit precedent forbids such simultaneous contradictory constructions.  SciMed, 242 F.3d at 1343.  For these reasons, this Court adopts the following element of Abhai's proposed construction: "a dosage form that provides rapid and complete release of drug (after a first dose by immediate release)."

**B.   "Enteric"**

The words in a claim are generally accorded "their ordinary and customary meaning" unless otherwise specified in the patent. Vitronics, 90 F.3d at 1582.  The word "enteric" inherently refers to the intestines, and one skilled in the art would recognize this basic medical definition.  Enteric, Dorland's Illustrated Medical Dictionary (32d ed. 2012).  Additionally, the specification describes the intestine as the preferred site of release.  '148 Patent col. 4 ll. 44-48 ("Surprisingly, applicants found that using a thicker application of enteric coating on the formulation allowed for the second pulsed dose to be released only and completely at the appropriate time in the desired predetermined area of the gastrointestinal tract, i.e., in the intestine.").

Due to the plain meaning of the word "enteric," and Shire's own description of the intestine as the site of release, the Court

adopts the following element of Abhai's preferred construction: "delayed until the drug has passed through the stomach into the intestines after oral administration."

### C. "Intended" versus "Designed"

Abhai has not advanced any argument supporting the inclusion of the word "designed." Lacking argument as to why "designed" is the preferred construction, it is unreasonable for this Court to adopt Abhai's preferred construction. Thus, this Court adopts Shire's preferred language and includes the word "intended" rather than "designed" in its construction of the claim.

### IV. CONCLUSION

Based on the foregoing discussion, this Court **ORDERS** the following construction of "a delayed enteric release dosage form that provides delayed release upon oral administration" in claims 1 and 12 of the '148 Patent: "a dosage form that provides rapid and complete release of drug (after a first dose by immediate release) intended to be delayed until the drug has passed through the stomach into the intestines after oral administration."

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
U.S. DISTRICT JUDGE